We'll now hear our final argument of the morning. This is Appeal No. 17-2076, Vivint, Inc. v. Alarm.com, Inc. Mr. Stern, you've reserved four minutes of rebuttal. Is that right? That's correct, Your Honor.  Good morning, Your Honors. Robert Stern for Patent Owner Vivint. May it please the Court. Today, I would like to focus on the Board's legal and factual mistakes in its finding that the Johnson and Moriah references each disclose the claimed terminal identifier. I direct your attention to page 23 in the appendix in the final written decision. If the law is properly applied to this record, there is no evidence that either reference meets the terminal identifier claim limitation, even under the Board's unreasonable claim construction, and these Board's errors call for a reversal in this case. If I may, let me turn first to the Johnson patent. The PTAB flatly misapplied the law of inherency and obviousness in finding that Johnson inherently discloses the terminal identifier. The claims require that the terminal identifier reach the management facility in order for the claimed remote control to take place. I direct your attention to column 34 of the patent, lines 4 and 5, which is in appendix 116. The Board found, made a factual determination, and we do not dispute, that Johnson's IP address will sometimes, but only sometimes, reach Johnson's data center. The Board also found, and ADC's expert admitted, and this is at the appendix at 2215 at paragraph 41, that sometimes the IP address will not reach the data center because the IP address will be behind a gateway server or a NAT router. This is in the final written decision, this finding is at appendix 27 and 28. Alarm.com's expert admitted that there are times that Johnson's system, the data center in Johnson, will not receive the IP address of the remote terminal? That's correct. If there is a NAT router or a gateway server, Your Honor, it won't read. If there is, then it won't. If there is, that's right. The Board, frankly, Your Honor, the Board went through a very elaborate analysis to even come up with the IP address in Johnson. But what I'm looking at here today, because of the standard for review, is exactly what is set forth in the final written decision, because that's the benchmark that I'm measuring. As I understand the Board's decision, it read through Johnson and found that Johnson doesn't disclose anything about an intervening gateway server or NAT router in between the remote terminal and Johnson's data center. And so it would appear that there's essentially a direct connection over the Internet, which would then necessarily mean that the remote terminal's IP address is getting to the data center. And that your side argued, well, there's going to be times, in fact many instances, where there is going to be a gateway server or NAT router in between. But I guess for me, I wonder whether that really is a full rebuttal, because that would still mean there are some instances, there are still some embodiments of Johnson's system where there is no gateway server, there is no NAT router. And so therefore there will be embodiments of employing Johnson's system where the IP address of the remote server, remote terminal is being transmitted to the data center. And so I'd like you to respond to that. We don't disagree with that analysis, Your Honor. So I guess the idea then is if the references system contemplates a lot of different embodiments, some with a gateway server or NAT router, and then some others with nothing of the kind, then there are, in fact, embodiments captured in Johnson's disclosure that meets this particular claim limitation of an IP address of the remote terminal getting to the data center. Yes, Your Honor, that's correct. And under the obviousness law of inherency, and I direct your attention to your recent Arendi decision, we have a missing element here, the terminal identifier. And under the law of inherency for obviousness, it must necessarily follow that the terminal ID, the terminal identifier, always reach the management facility as required by the claim in order for the remote control function, which is the central point of the NAT, to occur. In some embodiments, it always reaches. In some embodiments, it doesn't always reach. Doesn't the reference then, in fact, teach an embodiment that does inherently teach that claim limitation? No, that's not what the board found. The board misapplied the law of inherency, Your Honor, in obviousness. It said some of the times it reaches it and some of the times it does not. But under inherency for obviousness, which is according to the Arendi decision and others, when you have a missing element like we have here, it's a high standard. It must necessarily always be present. If the claim requires that the terminal identifier always reach the management facility, that's what the claim requires. That's why remote control can be achieved in this case. Every embodiment disclosed in Johnson must always have an IP address that will reach the data management. Well, Your Honor, the embodiments in Johnson, as construed by the court, I mean by the board, there are situations where it will reach and situations where it will not reach because of the presence of these servers. You have to be able to identify the terminal that's communicating with the system in order to be certain that the terminal is permitted to control, to provide the remote control of the system. Here in the Johnson reference, we only have certain, according to the board's factual findings, we only have certain situations where that occurs. And under the inherency law, for obviousness, for a missing element, it's not present. So it's a matter of law, our position is, Your Honor, that the Johnson reference does not meet the requirements for obviousness, inherency. Could you quickly turn to the Mariah theory for rejecting these claims? As I understand it, this hinges on the claim construction of terminal identifier to understand the type of terminal that the remote terminal is in order to understand the display capabilities and communication capabilities so that the data that you send over to the remote terminal is in the right format for that particular terminal. And the board looked to claims 16, 29, and 37 to better understand what is a terminal identifier and looked at those claims and concluded that it doesn't necessarily have to be some specific, unique code for a specific terminal. But instead, it's better understood to encompass other things, including just knowing the type of model that the terminal is in order to understand its display and communication capabilities. What is wrong with the board's understanding of terminal identifier in light of the way claims 16, 29, and 37 describe a terminal identifier? Your Honor, there is no credible evidence to support the board's finding. There's no credible evidence. Well, can you talk about claims 16, 29, and 37 then? Because obviously they relied on it, and one could look at that. One could possibly think that's credible evidence. Well, under our standard of review, our position is there's no credible evidence, so let me explain why. First of all, the terminal identifier, as pointed out in column 8, lines 34 through 40 in the patent, the terminal identifier is separate from the model name. The model name and the model terminal identifier are separately used in the patent, and that's also found in figures 6 and 8 of the patent. So they're entirely different things. As you pointed out correctly, Judge Chen, the model name defines the general characteristics of the device. It might be a particular model of a cell phone. It might be a particular communications protocol that the cell phone could use, but it doesn't identify that particular device. That's the terminal identifier's role. One of the concerns I had about your proposed claim construction is that you say a terminal identifier. It's almost as if you're reading the word unique in there. It has to be a unique terminal identifier. It has to identify this particular one as opposed to something that might identify, say, you know what, a subgroup of terminals. And I was wondering, given the existence of claims that do seem to define, dependent claims that seem to define the terminal identifier more broadly, how do you respond to what is it in the specification that makes you think that it has to be a unique terminal identifier? Well, Your Honor, it follows from the entire thrust of the invention that you want to, you know, the claim requires this remote control capability. And in order to be certain, as the claim requires, that your remote control is being effectuated by an actor using a specific terminal that is permitted to do so, then you need to be able to identify that particular terminal. Otherwise, you have no knowledge of whether the particular instructions that you receive at the management facilities are from an authorized terminal. So the whole thrust of this invention was to be able to provide remote control of security systems and the like. And if any terminal that fit this category, let's say all particular models of a cell phone, could make this remote control, then you wouldn't have the kind of remote control capabilities that the patent is directed to. Mr. Stern, you're running out of time, but just to give you some information, I'm really stuck on claims 16, 29, and 37. And I've been hoping you would give me a specific answer about those particular claims. The content of those claims and how they describe and characterize what a terminal identifier is and why you believe terminal identifier in Claim 1 means something different than what is actually plainly said in Claims 16, 29, and 37. I apologize, Your Honor. So the manufacturer's model code that's in 27 and 29 and 37 is a species of the terminal identifier. It's a manufacturer's model identifier. That's what it says, manufacturer's model identifier. It is a species of the terminal identifier that's in the broader claim. Which means if a prior art reference teaches a manufacturer's model identifier, then it anticipates that limitation, does it not? Well, Your Honor, our position is that it does not teach that. In fact, it just teaches a species of a terminal identifier. It doesn't teach the model name. It doesn't teach the model name. It is a form of identifier. And in the testimony from their expert, he admitted that there's various types of identifiers that can be present in a cell phone, for example. And so our position is that the manufacturer's terminal identifier, there's no credible evidence that it's the model name as we use it in the patent. They're separately shown in the patent. And they are for entirely different purposes. I don't want to burn up more time. Thank you. We'll hear from the other side. Mr. Stark, is it? Yes. Okay, whenever you're ready. Thank you, Your Honor. Good morning, and may it please the Court. I think I'll perhaps pick up right with Maria and the proper construction of terminal identifier. Your Honors, the 727 patent teaches that the terminal identifier may be quite broad. In fact, at column 25, lines 56, 59, the 727 patent says that the terminal identifier is not restricted, that it may be a user ID or it may be a home network ID. And as the Board has pointed out, as Your Honors have discussed, Claims 29 and 37 talk about a situation wherein said identifier, referring to the terminal identifier, is a manufacturer model identifier of said remote terminal. What do you think is going on in Figures 6 and 8? Doesn't it appear that the inventors are contemplating that a model name is distinct from a terminal ID? I do think, Your Honor, these are describing an embodiment where the model name can be distinct from the terminal ID, but then, of course, Claims 29 and 37 are expressly claiming that they may be the same. They may be one and the same. It really comes down to how unique does the identifier have to be, how particularly does it have to identify a device. For purposes of the claims, the terminal identifier is largely used so that the home network management facility can determine what kind of device it's talking to and tailor the display data to go to the device so that it can be appropriately displayed. Low-res data goes to a low-resolution device, or high-resolution data goes to a high-resolution device, that sort of thing. So it's perfectly consistent with that aspect of the invention for a manufacturer model identifier, or a model name, or a model code, as Maria puts it, to be a sufficient identifier for that purpose. There's absolutely nothing in the patent that says that the terminal identifier must be a unique identifier or must identify a specific device. There's nothing there. Indeed, Vivint didn't even propose that as their claim construction below, and they don't propose it here. They're, in their briefing, attempting to read a limitation like that into the construction of a terminal identifier, but it's not there. They haven't even sought to put that in. So with the proper understanding of terminal identifier, a terminal identifier can be, as claims 29 and 37 say, a manufacturer model identifier. What is a manufacturer model identifier? All we have to go on is plain language. There isn't a definition of that term in the 727 patent. There's not further limitation of it in the 727 patent. It's just something that identifies a manufacturer's model by plain language, and that's exactly what a model code is in Maria, and thus we would respectfully submit the board was exactly right to find that Maria, on its own, discloses a terminal identifier within the meaning of its patent. Can I push back on you a little bit on your reference to column 25, lines 55 to 60? It says the terminal IDs are added to the various information as identifiers. However, it is not restricted to this example. The identifier may be a user ID or a home network ID. I'm not sure it's saying that terminal identifiers may be user IDs or home network IDs. Instead, it's saying, in this example, terminal IDs are the identifiers. However, it's not restricted to this. The identifier may be the user ID, the home network ID. Do you see what I'm saying? I'm not sure if there's a direct line of equating these two. I do see what you're saying, Your Honor, and I guess I'd have to say it's viewed in that light. It's a little unclear, perhaps, what this disclosure is saying. There are issues throughout this document in that it was translated from Japanese and various corrections were made, and a lot of it, frankly, is unclear. But I think one thing that is clear is the terminal identifier is nowhere in this patent limited to be something that is a unique identifier, unique within the whole universe or among all devices. There's nothing that says that here at all. And quite the contrary. Again, claims 29 and 37 indicate that it may be, the terminal identifier may be, simply a manufacturer's model identifier. And that's sufficient. That's perfectly sufficient for the functionality claimed. How do you respond to Mr. Stern's point that the whole operation, how the invention would work would necessarily require that these terminal IDs be unique? There's absolutely no support. I noticed the counsel didn't cite any support in the patent for that. Looking at the claim, for instance, the representative claim, claim one, the terminal transmits a communication to the management facility and includes its identifier, includes a terminal identifier in that. The management facility uses that to determine what kind of device it is and to send appropriate data back to that device. So it doesn't need to know exactly which device. Is it Mr. Stark's device or is it anybody else's device? It doesn't need to know exactly that to do that function. The patent also talks about user IDs and passwords, so maybe that's how you, the system, the management facility understands who it's talking to in order to ensure that the person talking to it is the right person to control the in-home devices in some house across the country. Yes, exactly. For purposes of security, that's perfectly sufficient. The management facility also has an association between a terminal identifier and the identifier of the home server, the server identifier, on the other hand. So it matches up that way, but that, again, doesn't require that the terminal identifier be unique in all the world. I suppose your point is also supported by the fact that it's a comprising claim. So to the extent there's something else that's like an IP address or a home security or user ID, that that would be encompassed within. Yes, absolutely, Your Honor. And the claim doesn't recite security limitations. It just recites the sort of correspondences that I've been talking about. So Moria is completely sufficient by itself to disclose the terminal identifier within the meaning of the 727 patents, just as the Board found, and that's indeed sufficient to satisfy either Vivint's construction, their proposed construction, or the Board's construction,  is a terminal identifier that identifies a terminal. That's essentially Vivint's construction. The Board didn't even have to get to or enables communication with the Vivint patent, with the Moria patent, in order to find that the terminal ID limitation was disclosed there. Can you talk a little bit about Johnson and how the Board seemed to say, well, sometimes Johnson's remote terminal IP address will get to the data center, but sometimes it won't, and that's okay, and we still have the limitation there. Why is that? Well, Your Honor, I think quite simply the issue is that the Johnson patent discloses an embodiment, and really, picking up on Your Honor's question, all that has to be disclosed in the prior art is an embodiment that satisfies the limitation that we're looking for. It doesn't have to be that every embodiment in the prior art patent meets the limitations. The Johnson patent in figure five shows a laptop and labels it as a web browser and Internet connection. That's the user's computer in the Johnson invention, web browser and Internet connection. It connects directly via the Internet to the data center that's in the Johnson patent. Our expert's testimony, Dr. Ryan's testimony, was if you're going to communicate over the Internet, that has to be done with Internet protocol or IP addresses. Of course, IP addresses identify the source of the communication, and that's an identification. The embodiment shown in Johnson shows that communication, IP communication from the user's computer to the data center. That's going to be identified by an IP address, and it's necessarily so. You can't do Internet communications without IP addresses. What Vivint is arguing is Johnson could have disclosed something else. It could have disclosed using a gateway or a NAT or something like that. That's a bit like an argument that says, if my mother were a bus, she'd have wheels and live in a garage. It's not a bus, and the Johnson patent doesn't say anything about gateways or NAT or anything like that. That's what the board found. It's not disclosed, it's not described in Johnson. One can't just rewrite Johnson and then say, if it were rewritten in a different way, then there would be some issue or some lack of disclosure. Johnson perfectly well discloses terminal identifiers being IP addresses. That's, in fact, what our expert, Dr. Ryan, testified to. The board credited Dr. Ryan for substantial evidence for that. I will note, by the way, that the examiner, when these claims were presented to the patent office originally, the examiner cited Johnson, actually, to reject the original claims, and cited Johnson as disclosing a terminal identifier, or as the original translated from Japanese claims said, an identifying signal. The examiner cited Johnson as disclosing exactly that. IP address is the identifying signal or terminal identifier, as it's now called. Most of the claims were rejected over Johnson on that basis. The applicant, at the time, then came back and added the limitations that I mentioned about tailoring the display data to send the right kind of display data to the right kind of remote terminals. Those limitations were added, and the claims were allowed over Johnson with the addition of those limitations, all of which are in Maria. That was the basis for the board's obviousness findings. It's well-established, we submit, that Johnson inherently discloses, it's well-known in the art, well-known to persons skilled in the art, the use of IP addresses, those would be perfectly sufficient terminal identifiers. If I may, Your Honors, I would turn briefly to the other basket of issues in the appeal, which has to do with the first and second control information. Here, Vivint, I will note, did not offer any construction below as to these terms, first and second control information, nor did OM.com, in fact. That was not a disputed issue as to construction. Vivint argues here that the board somehow interpreted those claims to mean the same thing, and that somehow is error. The board actually specifically noted that the first and second control information have different purposes within the claim. First control information is sent from a user terminal, a remote terminal, to the management facility, and the second control information is sent from the management facility on to the home server. So two different things for the board's construction. What Vivint's issue really is, is can the content of those two messages be the same? Can the content be the same, or must it be different? There's nothing in the patent at all that says that it must be different, and I just want to briefly point Your Honors to a passage in the patent. It's at column 9, lines 36 to 41, which describes... This is what you quote in your red brief. Yes, where it just says the control information is passed on. It's received from the remote terminal and then passed on to the home server. So that's just copying the content of the first control information to the second control information and passing it on. That's perfectly fine within the scope of the 727 patent. Indeed, Johnson does that and more. It also adds a connect command when it sends information on to the home server. So even if the first and second control information have to have different content, Johnson discloses that as well. So Johnson perfectly well anticipates that limitation. Unless there are further questions, Your Honors, I will conclude there. Okay, thank you. Thank you. Two minutes. Thank you, Your Honor. We think the terminal identifier is unique, but our argument does not depend on this. Regardless of whether it's unique, it's not a model name because the patent talks about the two things separately. The terminal has a terminal identifier and a model name. Second, on Johnson, the board relied on inherency. Obviousness, inherency, that's where we are. We are reviewing this board's application of the law of inherency. As we all know, inherency requires that the limitation necessarily must be present in the prior art reference. We're not rewriting Johnson, Your Honor. We're making the point, which the board agreed with, that Johnson is broad enough to encompass the use of NAT routers and servers. That's all we're arguing. So with that, I conclude my argument. Thank you. Okay. Thank you, Mr. Stern. The case is submitted. And that is the end of today's session.